UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN GOLDIN, as Co-Executor of Bernice Goldin's Estate, on behalf of Bernice Goldin's IRA, and as Co-Trustee of the Paul Goldin Marital Trust B, and ROCHELLE GOLDIN, as Co-Executrix of Bernice Goldin's Estate, on behalf of Bernice Goldin's IRA, and as Co-Trustee of the Paul Goldin Marital Trust B,<br><br>Plaintiffs,<br><br>-v-<br><br>STATE STREET BANK AND TRUST COMPANY,<br><br>Defendant. | Civ. 1:13-cv-05711-KPF |

**DEFENDANT STATE STREET BANK AND TRUST COMPANY'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.      THE WRITTEN AGREEMENTS DISPOSE OF ALL CLAIMS......................................2

II.     PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS FOR ADDITIONAL
        REASONS ...........................................................................................................................4

        A.     There Can Be No Implied Contract Because There is An Express Contract...........5

        B.     The Implied Contract Would Run Afoul of the Statute of Frauds...........................5

        C.     The Complaint Otherwise Fails to Sufficiently Allege the Existence And
               Terms of Any Purported Implied Contract ..............................................................6

III.    PLAINTIFFS' NEGLIGENCE-BASED CLAIMS FAIL ...................................................8

        A.     The Lack of Any Independent Duty Forecloses Plaintiffs' Negligence
               Claim.........................................................................................................................8

        B.     The Negligence-Based Claims are Barred by the Economic Loss Rule..................9

        C.     The Negligent Misrepresentation Claim Otherwise Fails......................................10

IV.     BECAUSE STATE STREET IS NOT A FIDUCIARY, THE COMPLAINT
        FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY ........................10

V.      THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND
        ABETTING BREACH OF FIDUCIARY DUTY .............................................................12

        A.     Failure to Plead Substantial Assistance .................................................................12

        B.     Failure to Plead Requisite Knowledge...................................................................13

VI.     PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW, BARRING THEIR
        UNJUST ENRICHMENT CLAIM....................................................................................14

VII.    STATE STREET DID NOT PROXIMATELY CAUSE PLAINTIFFS' ALLEGED
        DAMAGES........................................................................................................................14

CONCLUSION.............................................................................................................................15

## **TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F. Supp. 2d 222 (S.D.N.Y. 2011) ................................................................................................... 8

*Beddall v. State St. Bank & Trust Co.*, 137 F. 3d 12 (1st Cir. 1998) ............................................ 11

*BNP Paribas Mortgage Corp. v. Bank of America*, 2013 WL 2452169 (S.D.N.Y. Jun. 6, 2013) ......................................................................................................................... 9

*Burns v. Del. Charter Guar. & Trust Co.*, 805 F. Supp. 2d 12 (S.D.N.Y. 2011) ...................... 9, 10

*Chevron Corp. v. Salazar,* 807 F. Supp. 2d 189 (S.D.N.Y. 2011) .................................................. 2

*Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315 (S.D.N.Y. 2012) ..................................................... 8

*DeLeon v. Wells Fargo Bank, N.A.,* No. 10-cv-01390, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011) ................................................................................................................... 2

*Ellis v. Provident Life & Accident Co.*, 3 F. Supp. 2d 399 (S.D.N.Y. 1998) ................................. 5

*Empire City Capital Corp. v. Citibank, N.A.,* No. 10-cv-2601, 2011 WL 4484453 (S.D.N.Y. Sept. 28, 2011) ................................................................................................... 8

*Hallmark Aviation Ltd. v. AWAS Aviation Services, Inc.*, No. 12-Civ-7688, 2013 WL 1809721 (S.D.N.Y. Apr. 30, 2013) ................................................................................... 14

*Ibar Ltd. v. Am. Bureau of Shipping*, 97-civ-8592, 1998 WL 274469 (S.D.N.Y. May 26, 1998) ................................................................................................................... 3

*In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478 (S.D.N.Y. 2011) ............................................... 3

*In re State Street Cases*, 12-cv-11770-DMG, Dkt. No. 56 (D. Mass. Aug. 21, 2003) .................. 3

*In re World Trade Ctr. Disaster Site Litig.*, 21 MC 100 (AKH), 2008 WL 2704317 (S.D.N.Y. Jul. 10, 2008) ..................................................................................................... 4

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197 (S.D.N.Y. 2013) ................ 6

*Kriegel v. Bank of America, N.A.*, No.07-cv-12246-NG, 2010 WL 3169579 (D. Mass. Aug. 10, 2010) ................................................................................................................. 12

*Lamm v. State Street Bank & Trust Co.*, 889 F. Supp. 2d 1321 (S.D. Fla. 2012) .................. 3, 7, 12

*Leibowitz v. Cornell Univ.*, 584 F.3d 487 (2d Cir. 2009) .............................................................. 4

*Levine v. Zadro Products, Inc.*, No. 02-civ-2838, 2003 WL 21344550 (S.D.N.Y. Jun. 9, 2003) .................................................................................................................................5

*Malaya v. City of Syracuse*, 638 F. Supp. 2d 303 (N.D.N.Y. 2010) ..................................................8

*Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226 (D. Colo. 2011) ................................................8

*Pedre Co., Inc. v. Robins*, 901 F. Supp. 660 (S.D.N.Y. 1995) .........................................................8

*Phoenix Four, Inc. v. Strategic Res. Corp.*, 05 CIV. 4837 (HB), 2006 WL 399396 (S.D.N.Y. Feb. 21, 2006) ..............................................................................................5

*RJ Capital v. Lexington Capital Funding II, Ltd.*, 10-cv-25, 2011 WL 3251554 (S.D.N.Y. Jul. 28, 2011) ..................................................................................................12

*Settle v. World Sav. Bank, F.S.B.,* ED CV 11-00800 MMM, 2012 WL 1026103 (C.D. Cal. Jan. 11, 2012) ..............................................................................................2

*Snyder v. Graham*, 09-CIV-10307, 2012 WL 983536 (S.D.N.Y. Mar. 22, 2012) ..........................4

*Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457 (E.D.N.Y. 2011) .........................................9

*Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) .................................................................................................................................6

*Szulik v. State Street Bank & Trust Co.*, 935 F. Supp. 2d 240 (D. Mass. 2013) .........3, 7, 10, 12, 13

**OTHER CASES**

*Austin v. Albany Law School of Union University,* 957 N.Y.S.2d 833 (N.Y.Sup. 2013) ..............11

*Camhi v. Tedesco Realty, LLC*, 962 N.Y.S.2d 660 662-63 (2013) ..................................................5

*EMC2 v. Advance Mfg. Co., Inc.*, No. 05-WAD-15, 2007 Mass. App. Div. 126 (2007) ................3

*Lapine v. Seinfeld*, 918 N.Y.S.2d 313 (Sup. Ct. 2011) ................................................................6, 7

*State Farm Fire & Casualty Company v. Main Brothers Oil Company*, 956 N.Y.S.2d 695 (N.Y. App. Div. 2012) ..................................................................................................4

**OTHER AUTHORITIES**

NY CPLR 3211(a) .............................................................................................................................4

DEL. CODE ANN. Title 8, § 259(a) ...................................................................................................3

N.Y. BUS. CORP. LAW § 906(b) .......................................................................................................3

N.Y. GOB. LAW § 5-701(a)(1) .........................................................................................................5

iii

FED. R. CIV. P. 12(b)(6) ..................................................................................................2, 12

## INTRODUCTION

Plaintiffs' Opposition ("Opp.") is, at bottom, an attempt to rewrite the Complaint and to play games with pleading standards. The Complaint makes no mention of any "implied" contract. Yet, confronted with written custodial contracts ("the Agreements") governing Plaintiffs' Accounts that foreclose liability, Plaintiffs for the first time claim that State Street may not enforce those Agreements and that the parties' relationship was instead based on an implied contract (one that, conveniently, seems to impose duties, yet no liability limitations). Plaintiffs then exhort the Court to accept at face value their rewriting of the Complaint, claiming that State Street is not at liberty to "prove" that it is the successor party to the Agreements. The Court should reject this tack.

As a matter of well-documented, judicially-noticeable public record, IBT merged into State Street on July 2, 2007. By operation of law, through the merger, State Street automatically received all rights belonging to IBT. Thus, without need for any further assignments or additional signatures, State Street is fully entitled to enforce the Agreements. And, because Plaintiffs do not dispute that the Agreements foreclose liability, this case should be dismissed.

Regardless, however, Plaintiffs' claims fail. The Complaint does not allege the material terms of any "implied" contract between Plaintiffs and State Street. And Plaintiffs rely largely on inapposite and outdated case law to support their deficient tort claims, which fail (among other reasons) because they: (i) rest on the alleged failure to discharge the same duties underlying Plaintiffs' contract claims, (ii) are barred by the economic loss doctrine, (iii) rely on deficient and implausible allegations concerning State Street's knowledge, duties, and conduct, and (iv) seek equitable relief that is barred by Plaintiffs' contract claim.

1

# ARGUMENT

## I. THE WRITTEN AGREEMENTS DISPOSE OF ALL CLAIMS

In its Opening Memorandum ("Mem."), State Street showed that this case is subject to dismissal pursuant to numerous clauses of the Agreements that define or eliminate duties, exculpate the custodian, or otherwise limit liability. *See* Mem. at 6-8. Plaintiffs do not dispute that, if the Agreements govern, they compel dismissal. *See generally* Opp. (failing to address terms of Agreements). Rather, Plaintiffs for the first time argue that State Street is not IBT's successor, that there is only an "implied contract" between State Street and Plaintiffs (one that Plaintiffs claim imposes duties on State Street but no liability limitations), and that the Court is not at liberty to determine otherwise under FED. R. CIV. P. 12(b)(6) ( "Rule 12(b)(6)"). Opp. at 4, 12-14. In other words, Plaintiffs hope to obscure from the Court's view that State Street merged with IBT and thereby acquired rights under the Agreements. The Court should not indulge this gamesmanship.

This Court is entitled to take judicial notice of the fact that IBT merged into State Street on July 2, 2007. *See, e.g.,* Declaration of Andrea Robinson ("Robinson Dec.") Ex. A (Articles of Merger filed with Massachusetts Secretary of State); Robinson Dec. Ex. B (State Street Corp., Form 8-K filing dated Jul. 2, 2007 announcing merger); *Chevron Corp. v. Salazar,* 807 F. Supp. 2d 189, 193 & nn. 4-5 (S.D.N.Y. 2011) (taking judicial notice of merger in connection with Rule 12(c) motion); *Settle v. World Sav. Bank, F.S.B.,* ED CV 11-00800 MMM, 2012 WL 1026103 at *3 (C.D. Cal. Jan. 11, 2012) (under Rule 12(b)(6) reviewing government documents, including certificate showing merger date); *DeLeon v. Wells Fargo Bank, N.A.,* No. 10-cv-01390, 2011 WL 311376, at *2-3 (N.D. Cal. Jan. 28, 2011) (under Rule 12(b)(6) reviewing documents evidencing bank merger in support of motion to dismiss). The fact of the merger—in addition to being widely reported in media— is also clear from Plaintiffs' own Account Statements, which

2

are incorporated by reference into the Complaint. *See* Compl. ¶¶ 54, 58; Robinson Dec. Ex. C (July 2007 account statement stating that "Investors Bank & Trust entered into an agreement to be purchased by State Street Bank" and "All current contracts and fee schedules remain intact.").[1]

By operation of law, the merger automatically transferred all of IBT's rights to State Street. *See* Mass. Gen. L. ch. 156D, § 80(a)(5) (upon the effective date of a merger, "all of the estate, property rights, privileges, powers and franchises of the constituent corporation . . . shall be transferred to and vested in the resulting or surviving corporation, without further act or deed.");[2] Mass. Gen. L. ch. 156D, § 11.07 (surviving company in merger automatically succeeds to "all property owned by, and every contract right possessed by" merged entity); *EMC2 v. Advance Mfg. Co., Inc.*, No. 05-WAD-15, 2007 Mass. App. Div. 126, at *2 (2007) (affirming right of surviving corporation to enforce constituent corporation's contract and finding that successor "has no burden to plead or prove that Data General assigned its rights under the agreement"). It is irrelevant that "State Street is not a signatory to the IBT Agreements" (Opp. at 12)—the statutes cited above automatically transfer rights to the merged entity. *See Ibar Ltd. v. Am. Bureau of Shipping*, 97-civ-8592, 1998 WL 274469 (S.D.N.Y. May 26, 1998) ("Although

---

[1] Indeed, to date, every court to interpret the IBT custodial contract has had no difficulty concluding that State Street is the successor to it and is entitled to enforce liability and exculpatory provisions. *See In re State Street Cases*, 12-cv-11770-DMG, Dkt. No. 56 (D. Mass. Aug. 21, 2003) (Report and Recommendation) and 69 (Order adopting Report and Recommendation) (hereinafter the "*Massachusetts Ruling*") at 3; *Szulik v. State Street Bank & Trust Co.*, 935 F. Supp. 2d 240, 245 (D. Mass. 2013) (hereinafter "*Szulik*"); *Lamm v. State Street Bank & Trust Co.*, 889 F. Supp. 2d 1321, 1324 (S.D. Fla. 2012) (hereinafter "*Lamm*").

[2] Massachusetts law governs State Street's rights following the merger because the merged entity is a Massachusetts corporation. However, the exact same rule would apply in Delaware (DEL. CODE ANN. tit. 8, § 259(a)) or New York (N.Y. BUS. CORP. LAW § 906(b)).

petitioners are non-signatories attempting to enforce the arbitration clause, they may do so because they are successors in interest").[3]

Plaintiffs cannot forestall dismissal by arguing that State Street is not entitled to "prove" its successor status on reply. *See* Opp. at 13.[4]  As an initial matter, State Street does not need to "prove" anything—the fact of the merger is subject to judicial notice and State Street's rights as successor arise by statute.  And, to the extent State Street is forced to address its successor status on reply, it is because Plaintiffs first raised the fiction of an implied contract (and accompanying theory that State Street is not successor to the Agreements) in their Opposition—the Complaint says nothing about any implied contract.  *See In re World Trade Ctr. Disaster Site Litig.*, 21 MC 100 (AKH), 2008 WL 2704317 (S.D.N.Y. Jul. 10, 2008) (allowing arguments on reply that "responded to the arguments raised by the plaintiffs and reinforced their original arguments").[5]

## II. PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS FOR ADDITIONAL REASONS

Seeking an end-around the Agreements, the Opposition attempts to recast Plaintiffs' contract claim as based on an implied contract, the terms of which are purportedly based on "the parties' course of conduct" and the "facts and circumstances of their relationship."  Opp. at 15. These new allegations cannot revive the Complaint's deficient breach of contract claim.

---

[3] *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478 (S.D.N.Y. 2011) does not aid the Plaintiffs.  That case did not involve a merger and thus did not address the automatic transfer of all rights and duties that occurs.  In any event, the case involved a situation where an alleged successor to a contract denied that it had acquired any duties under a contract, and the court held that contractual duties can be assigned only with consent of *the successor* (*i.e.,* you cannot transfer away your contractual duties unless the person to whom you transfer those duties consents).  State Street (the successor to IBT) does not dispute that it assumed IBT's duties.

[4] It is unclear why Plaintiffs cite NY CPLR 3211(a) in support of their argument concerning what State Street is and is not permitted to "prove" at this juncture.  *See* Opp. at 12.  That rule governs procedure in *New York state court*, and in any event says nothing relevant (it merely addresses general motion to dismiss standards).  Plaintiffs' citation to *State Farm Fire & Casualty Company v. Main Brothers Oil Company*, 956 N.Y.S.2d 695 (N.Y. App. Div. 2012) is inapposite for the same reason: that case addresses an irrelevant state court procedure governing the filings of motions to dismiss based on documentary evidence.

[5] Even arguments raised for the first time in reply are improper only to the extent they "deny the opposing party a fair opportunity to respond."  *Snyder v. Graham*, 09-CIV-10307, 2012 WL 983536 (S.D.N.Y. Mar. 22, 2012).  As the Opposition illustrates, Plaintiffs had ample opportunity to address State Street's ability to enforce the Agreements.  *See* Opp. at 4, 12-14, 15.

4

### A. There Can Be No Implied Contract Because There is An Express Contract

As an initial matter, because the parties have an express contract (*i.e.,* the Agreements, *see supra*), there cannot be an implied contract. *See, e.g., Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009). This, without more, disposes of Plaintiffs' implied contract claim.

### B. The Implied Contract Would Run Afoul of the Statute of Frauds

Plaintiffs also cannot base their case on an implied contract because that contract would be unenforceable. The statute of frauds provides that certain contracts, including those that cannot be performed within one year, are unenforceable unless evidenced by a writing. N.Y. GOB. LAW § 5-701(a)(1); *Camhi v. Tedesco Realty, LLC*, 962 N.Y.S.2d 660, 662-63 (2013) (affirming dismissal of claim for breach of alleged oral contract under statute of frauds). Further, "contracts of indefinite duration are deemed to be incapable of being performed within a year, and thus fall within the ambit of the Statute of Frauds." *Phoenix Four, Inc. v. Strategic Res. Corp.*, 05 CIV. 4837 (HB), 2006 WL 399396, at *11 (S.D.N.Y. Feb. 21, 2006) (quoting *Computech Int'l, Inc. v. Compaq Computer Corp.*, No. 02 Civ. 2628, 2002 WL 31398933, at *3 (S.D.N.Y. Oct. 24, 2002)).

Here, the statute of frauds applies because Plaintiffs assert a contractual relationship spanning more than one-year. *See* Compl. ¶¶37, 52, 56 (alleging State Street conduct from 2007 through 2011). However, Plaintiffs have not pointed to any writing evidencing the contract. Thus, there can be no breach of the implied contract that Plaintiffs now assert exists. *See Phoenix Four*, 2006 WL 399396, at *11 (granting motion to dismiss claim for breach of agreement with an indefinite duration because it "would be unenforceable under the Statute of Frauds and there was no agreement that could have been breached"); *see also Ellis v. Provident Life & Accident Co.*, 3 F. Supp. 2d 399 (S.D.N.Y. 1998) ("Under New York law, the Statute of Frauds is an available defense even against implied-in-fact contract claims" and dismissing

5

contract claims on motion for summary judgment on that basis); *Levine v. Zadro Products, Inc.*, No. 02-civ-2838, 2003 WL 21344550, at *6 (S.D.N.Y. Jun. 9, 2003) (granting motion to dismiss implied contract claim based on statute of frauds).

  **C. The Complaint Otherwise Fails to Sufficiently Allege the Existence And Terms of Any Purported Implied Contract**

  In addition to the above infirmities, Plaintiffs fail to plead the necessary elements of an implied contract claim. An implied contract "will not be found to have been formed if it is not reasonably certain in its material terms." *Lapine v. Seinfeld*, 918 N.Y.S.2d 313, 318 (Sup. Ct. 2011) (internal quotations omitted). As Plaintiffs' own case law confirms, "when a plaintiff cannot point to 'sufficient specific, concrete, factual representations such that they could be interpreted to supply the terms of an implied contract,' it has failed to state a cause of action." *Hudson & Broad, Inc. v. J.C. Penney Corp.*, Inc., 12 CIV. 3239 KBF, 2013 WL 3203742, at *3 (S.D.N.Y. June 18, 2013) (quoting *Sang Lan v. Time Warner, Inc.*, No. 11–cv–2870, 2013 WL 1703584 (S.D.N.Y. Apr.19, 2013)) (dismissing Plaintiffs' implied contract claims for, among other reasons, failure to allege with sufficient specificity what the terms were—"making it clear that "no contract was formed.") (cited at Opp. 14). The proponent of an implied contract must allege "in nonconclusory language ..., the essential terms of the parties' ... contract, including those specific provisions of the contract upon which liability is predicated, whether the alleged agreement was, in fact, written or oral, and the rate of compensation." *Lapine v. Seinfeld*, 918 N.Y.S.2d 313, 318 (Sup. Ct. 2011) (dismissing claim as "wholly conclusory" and "insufficient on its face to plead a cause of action for breach of an implied contract").

  Here, the Complaint says nothing about any implied contract—the word "implied" never even appears. The Complaint is also silent on the newly-asserted "course of conduct" and

"industry custom" that supposedly informed the implied contract's terms.[6]  Basic questions are also unanswered: When was this implied contract made?  Who made it?  How did State Street manifest its intent to enter into this implied contract?  What exactly does it say?  What benefits does it confer upon the parties?  This falls well short of pleading an implied contract claim.

Indeed, because the Complaint does not establish the terms (or even existence) of any implied contract, Plaintiffs are left with no basis for an assertion of breach.  For instance, the Complaint and Opposition refer to "fake" CUSIP numbers, but there can be no breach because Plaintiffs never contend that the implied contract obligated State Street to describe assets in a particular way.  Similarly, Plaintiffs also do not explain how (if at all) the implied contract required State Street's custodial fee to be structured, so there can be no breach if, as alleged, the fee was based on asset valuations.  The same can be said of Plaintiffs' other theories of breach—the Complaint does not tie them to terms of the purported implied contract.  As a result, Plaintiffs have failed to plead any implied contract breach.[7]

---

[6] To the extent the Opposition attempts to introduce new allegations to fill these holes, they should be disregarded. *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n. 8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."); *Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in Plaintiff's opposition papers, and hence such new allegations and claims should not be considered").

In any event, Plaintiffs cannot rely on ambiguous references to "industry standards" (Opp. at 18) to fill in missing terms because the Complaint lacks any reference to such standards being incorporated into the agreement. *See, e.g., Lapine v. Seinfeld,* 918 N.Y.S.2d 313, 319 (Sup. Ct. 2011) ("industry custom may not be relied upon where, as here, the pleading lacks any reference to it").  Similarly, the same sentence of the Opposition that refers to industry standards also refers to the "SEC Custody Rule."  However, that rule addresses the duties of investment advisors (*e.g.,* TAG), not custodians such as State Street.  Nor can Plaintiffs cite generic text from State Street's website to supply contract terms.  Opp. at 15-16.  Plaintiffs do not claim ever to have read that text, much less that they came to a meeting of the minds with State Street that the parties would have an implied contract based on them.

[7] In a last ditch effort to sustain the contract claim, the Opposition selectively invokes *Szulik* and the *Massachusetts Actions*, and suggests that those cases involve "similar" situations to this case.  *E.g.,* Opp. at 19.  Those citations are disingenuous in at least three respects.  *First*, the Court in *Szulik* and the *Massachusetts Actions* dismissed many of the same claims that Plaintiffs advance, including the vast majority of the claims for breach of the IBT agreements, portions of negligence claims, and the claims for aiding and abetting, and breach of fiduciary duty.  *Second*, those cases are of limited relevance because, unlike other plaintiffs, the Goldins base their case on the supposed existence of an implied contract.  *Finally*, Plaintiffs do not even acknowledge a third case brought by a TAG investor, *Lamm*, in which the Court dismissed all claims with prejudice, including claims similar to those advanced here.  To the extent any other TAG investors cases matter, *Lamm* provides unambiguous support for full dismissal.

7

### III. PLAINTIFFS' NEGLIGENCE-BASED CLAIMS FAIL

#### A. The Lack of Any Independent Duty Forecloses Plaintiffs' Negligence Claim

Plaintiffs do not dispute that the Agreements' exculpatory and waiver clauses would preclude their claim for negligence and negligent misrepresentation. *See* Opp. at 23.

Plaintiffs also appear to concede (as they must, based on the Complaint's allegations) that their negligence and/or gross negligence claim rests on State Street's alleged failure to discharge the *exact same* duties on which Plaintiffs' breach of contract claim rests. *Compare* Compl. ¶67 with ¶71 (alleging, respectively, purported breaches of contractual duties and identical grounds for negligence and/or gross negligence claim). This is fatal to Plaintiffs' claim. *See Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 326 (S.D.N.Y. 2012) (collecting cases and requiring plaintiffs to "demonstrate that Defendants breached a duty independent from their obligations under the contract"); *see also* Mem. at 16-17 & n. 11.[8]

Plaintiffs cannot save their negligence claim by resorting to "alternative" pleading. First, the negligence claim is not framed in the alternative and cannot be repleaded via the Opposition. Second, the cases cited in the Opposition do not involve pleading negligence in the alternative to breach of contract (or vice versa), much less under circumstances when the claims rest on the same purported duties. *See Malaya v. City of Syracuse*, 638 F. Supp. 2d 303, 316 (N.D.N.Y. 2010) (allowing alternative pleading of negligence claim and 42 U.S.C. § 1983 claim based on intentional conduct); *Pedre Co., Inc. v. Robins*, 901 F. Supp. 660, 666 (S.D.N.Y. 1995) (where

---

[8] Plaintiffs' suggestion that *Empire City Capital Corp. v. Citibank, N.A.,* No. 10-cv-2601, 2011 WL 4484453 (S.D.N.Y. Sept. 28, 2011) and *2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F. Supp. 2d 222 (S.D.N.Y. 2011) support the imposition of extra-contractual duties on State Street is nonsensical. The *Empire* court *dismissed* negligence claims based on plaintiffs' failure to allege a legal duty. *Empire*, 2011 WL 4484453 at *9. Similarly, the court in *Calandra* granted summary judgment for defendant depository bank based on the plaintiff's failure to demonstrate that the defendant owed a legally recognized duty of care. *Id.* at 239-40.
    Plaintiffs also cite for the first time Internal Revenue Code Section 408 as a purported basis of statutory duties. Opp. 22-23. Section 408 is inapplicable. Section 408 does not impose any duty of care independent of the Agreements nor does it create any private cause of action or otherwise impose any privately enforceable duty. *See Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1237-1238 (D. Colo. 2011) (dismissing negligence claims based on Section 408). Even if Section 408 were applicable, it could only impose duties related to Plaintiffs' IRA account. Finally, nowhere does the Complaint allege that State Street breached any duty purportedly imposed by this statute.

state law claims depended on later ruling on ERISA preemption, allowing breach of contract, negligence and other claims to be plead alternatively to ERISA claims); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 468 (E.D.N.Y. 2011) (considering state law claims pled in the alternative to federal and state statutory labor law claims).

  **B.**  **The Negligence-Based Claims are Barred by the Economic Loss Rule**

As set forth in State Street's Memorandum, a straightforward application of the economic loss doctrine also warrants dismissal of Plaintiffs' negligence and/or gross negligence and negligent misrepresentation claims because they are seeking to recover "purely economic losses" purportedly caused by State Street's negligence. Plaintiffs seek exception from the rule by relying on *Burns v. Del. Charter Guar. & Trust Co.*, 805 F. Supp. 2d 12, 25-26 (S.D.N.Y. 2011) (Sweet, J.), but that case is inapposite.

*First*, Judge Sweet later clarified that a contractual exculpatory clause (such as the one appearing in the Agreements) does not preclude application of the economic loss doctrine under circumstances like those presented here. *See BNP Paribas Mortgage Corp. v. Bank of America*, 2013 WL 2452169 (S.D.N.Y. Jun. 6, 2013) (distinguishing both *Burns* and *Grund v. Del. Charter Guarantee & Trust Co.*, 788 F.Supp.2d 226 (S.D.N.Y.2011), cited in Opp. at 25). Specifically, application of the economic loss doctrine is not foreclosed: (i) where the governing agreement expressly limits duties to those specified in the contract, or (ii) where "Plaintiffs . . . have not established" any "distinct, independent duties aside from those in the applicable contract." *Id.* at **12-14. Both circumstances are present here. The Agreements expressly limit State Street's duties to those stated therein. *See* Mem. at 3-4 (citing Agreements ¶¶16(A) & 20(A). And, as explained above, Plaintiffs fail to allege that State Street breached a duty of care that is distinct from any contractual duties.

9

*Second*, if Plaintiffs are correct that the parties have only an implied contract, then *Burns* would not apply in any event. *Burns* declined to bar negligence claims under the economic loss doctrine due to the existence of an exculpatory clause in the parties' underlying contract. But, here, Plaintiffs' "implied contract" theory relies on the proposition that the exculpatory clause appearing in the Agreements does not apply. *See, e.g.,* Opp. at 23 ("State Street cannot rely upon [the] agreements' exculpatory and waiver clauses"). In other words, for *Burns*—and subsequent applications of *Burns* in *Szulik* and the *Massachusetts Ruling*—to apply, the Agreements' exculpatory clause that Plaintiffs try so hard to avoid would need to apply.

### C.     The Negligent Misrepresentation Claim Otherwise Fails

The Opposition fails to respond to the majority of State Street's arguments concerning the deficiencies of Plaintiffs' negligent misrepresentation claim. For instance, the Opposition does not address the Complaint's fundamental failure to allege that State Street had any disclosure duty as a result of a special relationship with Plaintiffs. *See* Mem. at 16-17. Plaintiffs also fail to respond to State Street's showing that the Complaint fails to allege, in non-conclusory fashion, any reliance on State Street's unspecified representations. *See* Mem. at 17.[9]

### IV.     BECAUSE STATE STREET IS NOT A FIDUCIARY, THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY

Plaintiffs make no effort to oppose State Street's showing that the Agreements preclude any claim for breach of fiduciary duty. *See* Mem. at 18-19.

However, even if the Agreements do not apply, Plaintiffs failed to plead the existence of a fiduciary relationship. Plaintiffs argue that the "relationship between State Street and plaintiffs

---

[9] Plaintiffs are incorrect that the *Massachusetts Ruling* "disagreed" that the Agreements' exculpatory provisions bar claims for negligent misrepresentation. Opp. at 26 (citing *In re State Street Cases*, 12-cv-11770-DMG, Dkt. No. 56 (D. Mass. Aug. 21, 2003) (Report and Recommendation) and 69 (Order adopting Report and Recommendation). In fact, the court dismissed in full negligent misrepresentation claims pursuant to agreements with gross negligence exculpatory and waiver provisions identical to those at issue here. *Massachusetts Ruling* at 35-38 (claim surviving only as to one plaintiff whose agreement, unlike the IBT Agreement, did not contain a clause waiving claims concerning the accuracy of, and representations made in, account statements).

was not simply a bank-customer relationship." Opp. at 29. Yet the duties that the Opposition claims State Street owed—including "establishing custodian accounts, holding . . . Plaintiffs' funds and investments, executing TAG's instructions, . . . reporting account holdings and transactions, and disbursing funds from Plaintiffs' accounts[,]"—are precisely the types of ministerial, custodial duties that do not give rise to a fiduciary relationship as a matter of law. *See, e.g., Beddall v. State St. Bank & Trust Co.*, 137 F. 3d 12, 20 (1st Cir. 1998) ("mechanical administrative responsibilities (such as retaining assets and keeping a record of their value) are insufficient to ground a claim for fiduciary status"); *see also* Mem. at 18-19 (collecting cases dismissing breach of fiduciary duty claims).

The special facts doctrine does not aid Plaintiffs. Opp. at 29. As an initial matter, that doctrine applies where the allegedly undisclosed information relates to a transaction *between plaintiff and defendant*. *See, e.g.,, Austin v. Albany Law School of Union University,* 957 N.Y.S.2d 833, 844 (N.Y.Sup. 2013). But Plaintiffs are complaining that State Street failed to disclose information about *TAG's* transactions with Plaintiffs. *See* Opp. at 29 (asserting State Street "possessed special facts regarding the legitimacy of the investments").

Further, by Plaintiffs' own citations, the special facts doctrine applies only where one party (i) has superior knowledge that is unavailable to the other party, and (ii) knows that the other party is relying on it with respect to that knowledge. *See* Opp. at 29. Plaintiffs assert that State Street "possessed special facts regarding the legitimacy of the investments." Opp. at 29. But the Complaint fails to describe what exactly State Street knew about Plaintiffs' investments and objectives, why information about the investments was unknowable to Plaintiffs (especially since the investments were made by Plaintiffs' own investment manager), and how State Street knew that Plaintiffs were supposedly relying on it (rather than on their own investment manager,

TAG). *See Austin*, 957 N.Y.S.2d at 844 (refusing to apply special facts doctrine because "the exercise of reasonable diligence" could have informed plaintiffs of allegedly undisclosed facts).

Finally, as State Street has already shown (Mem. at 20), the breach of fiduciary duty claim should also be dismissed as duplicative of the contract claim. Plaintiffs miss the point by arguing "alternative" pleading. Opp. at 30. Plaintiffs' breach of fiduciary duty claim is not alternatively plead, and the Complaint does not allege any duties that are independent of the contractual duties identified in the Complaint. *Compare* Compl. ¶67 *with* ¶86 (alleging, verbatim, same asserted breaches of contractual and fiduciary duties).[10]

## V. THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### A. Failure to Plead Substantial Assistance

The Opposition does not attempt to distinguish the cases the Memorandum cites which demonstrate that State Street's alleged conduct—amounting to nothing more than the settlement of transactions at TAG's direction, *see* Compl. ¶92—cannot constitute the "substantial assistance" required to sustain an aiding and abetting claim. *See* Mem. at 21. Instead, citing *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 115 (S.D.N.Y. 2009), Plaintiffs argue that State Street's "inaction" renders it liable as an aider and abettor. Opp. at 32. But as *Meisel* recognizes, "inaction" can constitute substantial assistance "only where the alleged aider and abettor owes a fiduciary duty directly to the plaintiff." *Id.* (dismissing aiding and abetting claim against defendant who did not owe fiduciary duty); *see also In re Agape Litig.* (Agape II), 773 F.Supp.2d 298, 323 (E.D.N.Y. 2011) (no aiding and abetting liability where a bank has no affirmative duty

---

[10] Plaintiffs also incorrectly suggest that breach of fiduciary duty claims can never be resolved at the motion to dismiss stage. Opp. at 30-31. Courts do not hesitate to dismiss claims where, as here, the Complaint lacks facts sufficient to establish the existence of duty. *See Kriegel v. Bank of America, N.A.*, No.07-cv-12246-NG, 2010 WL 3169579, at *12 (D. Mass. Aug. 10, 2010); *RJ Capital v. Lexington Capital Funding II, Ltd.*, 10-cv-25, 2011 WL 3251554, at *11 (S.D.N.Y. Jul. 28, 2011); Mem. at 17-20 (citing cases). Indeed, the courts in *Szulik* and *Lamm* had no difficulty determining under Rule 12(b)(6) that State Street is not a fiduciary.

to take action). State Street is not a fiduciary (*see supra*). In any event, the Complaint does not allege—much less with specificity—any "inaction" attributable to State Street that assisted in Tagliaferri's alleged breaches of fiduciary duty. *See* Compl. ¶92 (alleging only that "State Street provided substantial assistance . . . by disbursing Plaintiffs' funds to TAG, Tagliaferri and Cornell")[11]; *see also* Massachusetts Ruling at 44 (allegations of "passive assistance and inaction" are insufficient to plead substantial assistance).

### B. Failure to Plead Requisite Knowledge

While conceding it is a necessary element of their claims, Plaintiffs also fail to identify any allegations that, with the requisite particularity or otherwise, establish State Street's actual knowledge of TAG's breach of fiduciary duty. Indeed, at the recent status conference in which the parties addressed the instant motion, Plaintiffs' counsel conceded the Complaint does not allege willful misconduct or intentional fraud by State Street. Tr. of Oc. 29, 2013 Conf. at 10.

Indeed, as evidence of State Street's knowledge, the Opposition merely points to a State Street April 2011 letter to investors, which—in addition to being mischaracterized in the Complaint (*see* Mem. at 12)—is unrelated to the central allegations that TAG and Tagliaferri made poor investments on Plaintiffs' behalf. *See* Compl. ¶91 (alleging that State Street knew that TAG and Tagliaferri "were transferring Plaintiffs' funds to TAG Affiliated Companies" rather than "suitable investments such as stable stocks and municipal bonds" in line with Plaintiffs' investment objectives). That letter, which concerned State Street's attempts to obtain accurate asset valuations from TAG, does nothing to demonstrate State Street's actual knowledge or familiarity with Plaintiffs' investment objectives. In addition, Plaintiffs never

---

[11] Plaintiffs' reliance on *Szulik* to support their aiding and abetting claim makes little sense—there was no aiding and abetting claim alleged in that case. Opp. at 33. Nor does the *Szulik* court's causation analysis have any relevance to whether State Street provided substantial assistance. Plaintiffs' aiding and abetting claim is subject to a more stringent pleading standard, and the mere "acceptance of defective and worthless promissory notes"—*i.e.,* alleged inaction—is insufficient to constitute substantial assistance as a matter of law. *See Massachusetts Ruling* at 44 (finding that allegations of "inaction [], without more, does not rise to the level of substantial assistance).

13

address the cases in State Street's Memorandum demonstrating how the Complaint's references to "red flags" and speculative claims of knowledge are insufficient to plead knowledge. *See* Mem. at 22-23.[12]

## VI. PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW, BARRING THEIR UNJUST ENRICHMENT CLAIM

As Plaintiffs' own authority recognizes, a "valid contract between the parties, which relates to the same subject matter underlying the unjust enrichment claim, bars the quasi-contract relief." *Hallmark Aviation Ltd. v. AWAS Aviation Services, Inc.*, No. 12-Civ-7688, 2013 WL 1809721, at *5 (S.D.N.Y. Apr. 30, 2013). Plaintiffs' unjust enrichment claim is premised entirely on allegations that State Street collected excessive custodial fees—conduct that Plaintiffs claim breached State Street's contract with Plaintiffs. *See* Opp. at 20-21; Compl. ¶67(f). This precludes Plaintiffs' claim for equitable relief. *See* Mem. at 23-24.

Plaintiffs again cannot save their unjust enrichment claim through "alternative" pleading—the claim is not pled in the alternative, and the cases cited by Plaintiffs allowed unjust enrichment claims to proceed alongside contract claims only where the existence of a contract was disputed or did not cover the entire subject matter of the dispute. *See* Opp. at 34 (citing inapposite cases). Here, both parties assert that a contract exists (whether express or implied), and Plaintiffs seek to recover damages based on the payment of "excessive custodial fees" in violation of that contract. As a result, the unjust enrichment claim cannot survive.

## VII. STATE STREET DID NOT PROXIMATELY CAUSE PLAINTIFFS' ALLEGED DAMAGES

The Complaint makes plain, and Plaintiffs do not dispute, that their alleged losses were the result of TAG's investment decisions and alleged illegal activity. *See, e.g.,* Compl. ¶¶20, 23-

---

[12] Plaintiffs fare no better alleging that State Street aided and abetted TAG's wrongdoing by providing inaccurate asset valuations. Opp. at 6. That cannot constitute assistance with wrongdoing because the Agreements authorized the custodian to rely on Plaintiffs' investment manager (TAG) for asset valuations.

14

30 (alleging that TAG and Tagliaferri were responsible for challenged investment decisions). Moreover, the Opposition does not contest that any purported misrepresentations appearing on Plaintiffs' account statements reflected transactions that *had already* occurred. *See* Mem. at 25. Plaintiffs cannot evade this result now by asserting generically that questions of proximate causations are "issues of fact." Opp. at 34-35. Where (as here) it is apparent from the face of the Complaint that proximate cause is lacking, courts do not hesitate to dismiss. *See* Mem. at 24-25 (citing cases dismissing claims for lack of proximate causation).

## CONCLUSION

The Court should dismiss with prejudice all claims against State Street.

Dated: January 6, 2014

WILMER CUTLER PICKERING HALE AND DORR LLP

/s/ Andrea J. Robinson
Andrea J. Robinson
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
andrea.robinson@wilmerhale.com

*Attorneys for Defendant State Street Bank and Trust Company*

15